O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PLACIDO VALDEZ,                    )   Case No. CV 14-09748 DDP (Ex)
                                   )
              Plaintiff,           )   **ORDER RE MOTION TO DISMISS OR**
                                   )   **COMPEL ARBITRATION**
        v.                         )
                                   )   [Dkt. No. 20]
TERMINIX INTERNATIONAL             )
COMPANY LIMITED PARTNERSHIP,       )
a Delaware limited                 )
partnership dba ANTIMITE           )
TERMITE AND PEST CONTROL,          )
                                   )
              Defendants.          )
_____   )

     Presently before the Court is Defendant's motion to dismiss
the First Amended Complaint ("FAC") and compel arbitration.  Having
heard oral arguments and considered the parties' submissions, the
Court adopts the following order.

**I.    BACKGROUND**

     Plaintiff is Defendant's former employee; he worked as a
Termite Technician from March 1994 to November 2013.  (FAC, ¶ 12.)
Plaintiff alleges that Defendant did not allow its employees to
take rest and meal breaks as required by California law.  (Id. at
¶¶ 13, 24-33.)  Plaintiff further alleges that Defendant failed to

pay wages due and failed to maintain accurate wage records. (*Id.* at ¶¶ 34-38, 48-52.) Plaintiff also argues that these wage and hour violations are unfair business practices under California's Unfair Competition Law ("UCL"), (*Id.* at ¶¶ 39-47.) In addition to compensatory damages, penalties, and injunctive relief on his own behalf and on behalf of a class of employees as to the above, Plaintiff also seeks penalties on behalf of the state under the Private Attorneys General Act of 2004 ("PAGA"). (*Id.* at ¶¶ 53-60.)

Defendant alleges, and Plaintiff does not argue otherwise, that Plaintiff signed an arbitration agreement that formed part of his employment contract. (Mot. at 2; *id.*, Exs. A & B.) That agreement states that it is a "mutual agreement to arbitrate covered Disputes which is the exclusive, final, and binding remedy for both the Company and me and a class action waiver." (*Id.*, Ex. B, § 1.) In the agreement, the employee agrees that he and the company

> mutually consent to resolution under the [agreement] and to final and binding arbitration of all Disputes, including, but not limited to, any preexisting, past, present or future Disputes, which arise out of or are related to . . . my employment, [or] the termination of my employment . . . on-duty or off-duty, in or outside the workplace . . . .

(*Id.* at § 3.) "Disputes" are specifically defined to include "all employment related laws," including state laws. (*Id.*)

The agreement contains a class action waiver and a waiver of the right to bring a "representative action." (*Id.* at § 10.) The class action waiver is not severable. (*Id.*) However, the "representative action" waiver *is* severable, "if it would otherwise

render this [agreement] unenforceable in any action brought under a

private attorneys general law." (Id.)

The agreement also contains a choice of law provision that requires that it be "construed, interpreted and its validity and enforceability determined," under the Federal Arbitration Act ("FAA") and Tennessee law, "unless otherwise required by applicable law." (Id. at § 13.)

With the exception of the class action waiver, provisions of void or unenforceable provisions of the agreement may be modified or severed. (Id. at § 18.)

Defendant moves to dismiss the FAC and compel arbitration under the terms of the agreement.

**II.   LEGAL STANDARD**

Under the FAA, 9 U.S.C. § 1 et seq. , a written agreement that controversies between the parties shall be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and a party to the agreement may petition a district court with jurisdiction over the dispute for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. §§ 2, 4.  The FAA reflects a "liberal federal policy favoring arbitration agreements" and creates a "body of federal substantive law of arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The FAA therefore preempts state laws that "stand as an obstacle to the accomplishment of the [statute]'s objectives." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011).  This includes "defenses that apply only to arbitration or that derive their

1    meaning from the fact that an agreement to arbitrate is at issue,"
2    as well as state rules that act to fundamentally change the nature
3    of the arbitration agreed to by the parties.  Id. at 1746, 1750
4    (California rule allowing consumers to invoke class arbitration
5    post hoc was neither "consensual" nor the kind of arbitration
6    envisioned by the FAA).

7         On the other hand, "[t]he principal purpose of the FAA is to
8    ensure that *private* arbitration agreements are enforced according
9    to their terms."  Id. at 1748 (emphasis added) (internal quotation
10   marks and brackets omitted).  Moreover, parties to an arbitration
11   agreement cannot bind non-parties.  E.E.O.C. v. Waffle House, Inc.,
12   534 U.S. 279, 293-94 (2002).  Thus, an individual cannot contract
13   away the government's right to enforce its laws, even if the
14   government seeks to recover "victim-specific" remedies such as
15   punitive damages.  Id. at 294-95.  This is true even where the
16   individual victim may have the ability to limit the relief the
17   government can obtain in court.  Id. at 296.

18   **III. DISCUSSION**

19        Plaintiff does not dispute the existence of the arbitration
20   agreement.  However, he does argue that California, rather than
21   Tennessee, law applies; that Defendant has violated the agreement
22   by failing to initiate mediation; that the agreement is both
23   procedurally and substantively unconscionable; and that in any
24   event the agreement cannot apply to his claims for injunctive
25   relief or his claims under PAGA.  (Opp'n generally.)  The Court
26   addresses each argument in turn.
27   ///
28   ///

4

## A.    Applicable Law

California courts apply the law of the state designated by the contract "unless (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute." <u>Gen. Signal Corp. v. MCI Telecommunications Corp.</u>, 66 F.3d 1500, 1506 (9th Cir. 1995).

Plaintiff argues that the state designated in the arbitration agreement, Tennessee, has "no substantial relationship to the parties," although Defendant is headquartered there, because Plaintiff has "never stepped foot in Tennessee." (Opp'n at 4.) However, in the sentence immediately after the one quoted above, <u>Gen. Signal Corp.</u> makes clear that only one party need have a substantial relationship with the designated state. 66 F.3d at 1506 ("The fact that GSX is incorporated in New York is sufficient to establish a 'substantial relationship.'").

Plaintiff also argues (albeit under the unconscionability analysis) that the agreement evades California statutes by applying "Tennessee substantive law." (Opp'n at 7.) The Court does not, however, read the agreement as precluding substantive wage and hour claims under California law. Rather, the agreement requires that the *contract* be interpreted under Tennessee law: "I expressly agree that this Plan shall be construed, interpreted and its validity and enforceability determined strictly in accordance with . . . the laws of Tennessee." (Mot., Ex. B at § 13.) The disputes governed by the agreement include "all employment related laws," including state laws. (<u>Id.</u> at § 3.) Thus, the substantive law governing the

*claims* is (in this case) California law, while the law to be
applied in interpreting the *arbitration agreement* is Tennessee law.

The Court therefore concludes that the agreement is to be
interpreted and analyzed under Tennessee law, unless doing so as to
a specific provision would "run contrary to California public
policy" or deprive Plaintiff of a California statutory right.

**B.   Mediation**

Plaintiff argues that Defendant cannot compel arbitration,
because it has not yet attempted mediation.  Defendant, however,
argues that the plain terms of the agreement only require *Plaintiff*
to mediate.

The arbitration agreement lays out a three-stage process by
which an employee may attempt to resolve "disputes" with the
company.  (Mot., Ex. B at §§ 5-6.)  The employee first initiates a
complaint with the human resources department through one of
several channels.  An "Ombudsman" is appointed to investigate and
prepare a "Final Response" to the complaint.  If the employee is
not satisfied, he or she may, first, have the Ombudsman's response
reviewed by a panel of "senior executives"; second, initiate
mediation; and third, initiate arbitration.  These steps are
sequential and cumulative, and "failure to exhaust these
contractual remedies may be raised as an affirmative defense in
arbitration." (<u>Id.</u> at § 5.)  However, California employees may
bypass the executive review stage and proceed directly to
mediation.  (<u>Id.</u> at § 7.)

According to Defendant:

Plaintiff argues that *Defendant* should have initiated

mediation before seeking arbitration, ignoring that the

6

1    agreement requires *Plaintiff* to first pursue mediation on his

2    claims.  Defendant Terminix did not bring a claim against

3    Plaintiff. Only Plaintiff has violated his arbitration

4    agreement.

5  (Reply at 1.)

6    Defendant's argument, as phrased, is ambiguous.  If Defendant

7  argues that it is not bound by the same requirements as Plaintiff

8  in resolving disputes, that would seem to make the contract so one-

9  sided as to be unconscionable.  <u>Taylor v. Butler</u>, 142 S.W.3d 277,

10  286 (Tenn. 2004).  On the other hand, if, as seems more likely,

11  Defendant merely means to argue that because Plaintiff initiated

12  this complaint, it is Plaintiff's responsibility, rather than

13  Defendant's, to seek out mediation, that is a correct reading of

14  the contract.  The structure of the agreement's dispute resolution

15  process is such that the party initiating the process – which can

16  include the filing of an arbitrable claim in court (<u>id.</u> at § 5) —

17  is responsible for escalating from filing a request to initiate the

18  process with the human resources department, to mediation, and

19  finally to arbitration.

20    Defendant is therefore not barred from seeking to compel

21  arbitration because it has not sought to mediate.[1]

22  **C.   Unconscionability**

23    In Tennessee, "enforceability of contracts of adhesion

24  generally depends upon whether the terms of the contract are beyond

25  the reasonable expectations of an ordinary person, or oppressive or

26

27    [1]<u>But see</u> Part III.C.2.b., <u>infra</u>, discussing unconscionability
28  of the use of the mediation requirement as an affirmative defense
in arbitration.

unconscionable." <u>Taylor</u>, 142 S.W.3d at 286. "Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." <u>Trinity Indus., Inc. v. McKinnon Bridge Co.</u>, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001). However, "[i]n Tennessee we have tended to lump the two together . . . ." <u>Id.</u> Thus, in Tennessee the focus is on inequality, whether procedural or substantive, in light of "all the facts and circumstances of a particular case," including relative bargaining power. <u>Haun v. King</u>, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984). A contract is unconscionable if "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." <u>Id.</u> Another way to put this is that the provisions, and the circumstances under which the contract is signed, are "so one-sided that the contracting party is denied any opportunity for a meaningful choice." <u>Id.</u> In general, "[c]ourts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." <u>Buraczynski v. Eyring</u>, 919 S.W.2d 314, 320 (Tenn. 1996).

**1.   Procedural Unconscionability**

In the context of employment agreements, the inequality of bargaining power between employers and employees (at least in the absence of collective bargaining) can be quite stark – especially when the employees have little education and are unlikely to have

legal representation.  A federal district court in Tennessee
described the problem as follows:

> [M]any of the hallmarks of procedural unconscionability are
> present.  The applicants are seeking low-wage jobs and many
> have limited education, while attorneys for EDSI, a
> corporation, have tailored the Agreement to its needs.  Ryan's
> does not permit potential employees to modify any portion of
> the Agreement or Rules . . . .   [E]mployees are not permitted
> to meaningfully consider the Agreement for any period of time,
> as they are required to sign it on the spot or forfeit the
> opportunity to be considered for employment.  Potential
> employees may confer with an attorney before signing the
> Agreement, but this is an empty opportunity, given the time
> constraints on signing and the perceived bad impression that
> consulting an attorney might engender in the potential
> employer. Also, there is no provision for employees to
> unilaterally revoke consent to the agreement after signing it,
> even if they do not obtain a position at Ryan's.

Walker v. Ryan's Family Steak Houses, Inc., 289 F. Supp. 2d 916,
933 (M.D. Tenn. 2003).

On the other hand, this procedural unconscionability analysis,
if read at a high level of abstraction, in many ways simply mirrors
the definition of a contract of adhesion – that is, a "take-it-or
leave it," non-negotiable offer by a party that substantially
controls access to something desirable.  Such contracts have, for
better or worse, become somewhat routine in American life.  AT&T
Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1750 (2011) ("[T]he
times in which consumer contracts were anything other than adhesive

are long past."). Thus, the mere fact that an employment contract is drafted by an employer and may be non-negotiable likely does not suffice to make it unconscionable. Rather, the contract must be evaluated in terms of both the conditions under which it is signed and the harshness of its substantive provisions.

As noted by the Tennessee federal court above, conditions showing unequal bargaining power or a coercive environment affecting an employment contract include: the educational background and likely job prospects of the individual; whether the arbitration agreement must be signed before or after the hiring process; whether, if it must be signed beforehand, it may be revoked if the employee is not hired; and whether the employee is able to take the contract away and read it privately – or consult an attorney – before signing.

Plaintiff argues that he was "not provided reasonable notice of his opportunity to negotiate or reject the terms of the Arbitration Agreements, nor did he have an actual, meaningful, and reasonable choice to exercise that discretion." (Opp'n at 6-7.) He also cites a case in which a "job applicant [was] required to sign [an] arbitration agreement before being considered for employment." (Id. at 6.) However, he does not present specific facts that would show that *he* was required to sign an arbitration agreement to be considered for a job, and indeed it appears that this was not the case. (FAC, ¶ 12 (Plaintiff was employed by Defendant from 1994 to 2013); Mot., Ex. A & B (Plaintiff signed initial arbitration agreement in 2010 and current arbitration agreement in 2011). He also does not present any particular facts, or even concrete allegations, as to whether he was given an

10

1  opportunity to read the agreement privately or consult an attorney.
2  He also does not describe his educational level.

3      Plaintiff does allege that he was a non-exempt, hourly worker
4  making $21.75 an hour.  (FAC, ¶ 12.)  This militates slightly in
5  favor of a finding of unconscionability.  Nonetheless, because
6  there are few specific facts pointing to shockingly unfair or
7  unequal circumstances, for the Court to find the agreement
8  unconscionable, the substantive terms of the agreement must be
9  oppressive or egregiously one-sided.

10 **2.   Substantive Unconscionability**

11 **a.   Ability to Bring Claims Under California Law**

12      Plaintiff's primary argument for substantive unconscionability
13 – the contention that the agreement deprives him of the right to
14 bring claims under California law – has already been dealt with
15 above.  The Court does not read the plain language of the contract
16 that way, nor do the assumptions undergirding the FAA about the
17 operation of arbitration agreements support such a reading.  "By
18 agreeing to arbitrate a statutory claim, a party does not forgo the
19 substantive rights afforded by the statute; it only submits to
20 their resolution in an arbitral, rather than a judicial, forum."
21 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S.
22 614, 628 (1985).

23 **b.   "Affirmative Defense" Clause and Mediation**

24      Plaintiff's argument does raise one small issue of
25 unconscionability, however.  Defendant, as noted above, asserts
26 that Plaintiff has "violated" the terms of the arbitration
27 agreement by not seeking to mediate the issue.  The Court observes
28 that the agreement provides that "I must follow the steps of the

11

1   Plan in order and the failure to exhaust these contractual remedies

2   may be raised as an affirmative defense in arbitration." (Mot.,

3   Ex. B, § 5.)   Thus, it would appear there is some danger that

4   Defendant will attempt to bar Plaintiff from obtaining relief on

5   his statutory claims based on a procedural default under the terms

6   of the agreement.

7        The Court finds that the "affirmative defense" mechanism, if

8   so applied, would be unconscionable.  Allowing an employer to set

9   up a cumbersome procedural mechanism for its employees to follow,

10  in order to increase the likelihood of procedural default, would

11  undermine the principle that a party who signs an arbitration

12  agreement "does not forgo the substantive rights afforded by the

13  statute." Mitsubishi Motors, 473 U.S. at 628.  Presumably, the

14  "substantive rights" afforded by a statute include a limitation of

15  affirmative defenses to be applied against the statutory claim to

16  those envisioned by the legislature, against the background of the

17  state's statutory and common law scheme, as well as the

18  constitutional right to due process.  This is not to say that an

19  arbitration agreement can never set its own procedures, of course.

20  But it is to say that such procedures are not vetted by either a

21  democratic process or judicial solicitude for the rights of

22  litigants, and a court should be cautious about allowing the more

23  powerful party to a contract to create procedural pitfalls for the

24  weaker party.

25       Nor does the contract clearly spell out, for an

26  unsophisticated party, the consequences of the "affirmative

27  defense," so that he could reasonably be said to assent to what

28  amounts to a potential waiver of rights.  Walker v. Ryan's Family

Steak Houses, Inc., 289 F. Supp. 2d 916, 933 (M.D. Tenn. 2003) (finding unconscionable arbitration agreement that stated employees gave up their right to "litigation in state or federal court," because "'litigation' is not as recognizable a term as 'trial' or 'jury' to persons of limited education") aff'd, 400 F.3d 370, 382 (6th Cir. 2005) ("[M]ost of the plaintiffs lack even a high school degree and, therefore, were at a disadvantage when attempting to comprehend the Arbitration Agreement's legalistic terminology."). An employee of ordinary reason, but lacking in legal education, would be surprised to learn that he could unwittingly waive the right to vindicate his statutory rights at all by failing to carefully hew to the three-process.

This is particularly the case when two of the steps do not involve binding arbitration and are essentially mere opportunities for the company to delay resolution of an employee's claim in the hope that he will give up. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1749 (2011) (purpose of FAA is to promote arbitration, in part, in order to achieve "streamlined proceedings and expeditious results"). Nor is this finding of unconscionability precluded by the FAA; the purpose of the FAA is to encourage *arbitration*, not mediation or "senior executive review" or investigations by ombudsmen. "There is no federal policy favoring arbitration under a certain set of procedural rules" – much less a federal policy favoring in-house, multi-step procedures prior to arbitration. Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989).

1    Finally, the "affirmative defense" provision, in conjunction
2    with other provisions of § 5, creates anomalies that are not easily
3    resolved.  For example, the agreement states that filing "a claim
4    in court" will "be considered as a request to Initiate the Plan."
5    (Mot., Ex. B, § 5.)  Does that means that filing a lawsuit is
6    simply one of many acceptable paths for initiating the process?  Or
7    does it mean that an employee has, as Defendant argues, "violated"
8    the agreement?  Under such circumstances, is he also still required
9    to go through the preliminary step of notifying a manager or human
10   resources representative?  Or does it become the responsibility of
11   Defendant, once a claim is filed in court, to initiate the
12   Ombudsman process, because there has been a "request"?  And where
13   an employee files a claim in court and the employer successfully
14   moves to compel *arbitration*, does the court's order place the
15   parties at the arbitration stage of "the Plan," or merely at the
16   preliminary stage?  If the former, has the employee "fail[ed] to
17   exhaust . . . contractual remedies," so as to trigger the
18   affirmative defense provision?  Asking an employee or prospective
19   employee to untangle these questions while filling out new-hire
20   paperwork, so that he can realistically consent to a provision that
21   waives his substantive claims if he fails to "follow the steps of
22   the Plan," is not reasonable.
23      The Court therefore concludes that the "affirmative defense"
24   provision in § 5 of the agreement is unconscionable, at least
25   inasmuch as it might be applied to prevent Plaintiff from
26   vindicating his claims in arbitration.[2]  It is also severable,
27   _____
28      [2]If following the steps of "the Plan" was a material term of
                                                (continued...)

14

1   under § 18 of the agreement.  The Court therefore holds the

2   provision unenforceable and severed from the agreement.

3   **c.    Statute of Limitations**

4          Plaintiff argues that the agreement is unconscionable because

5   it deprives him of the benefit of the statutes of limitations as to

6   his state claims, bringing them all under a single one-year

7   limitation by contract.  (Opp'n at 9.)  Defendant, however,

8   specifically disavows any intent to interfere with the California

9   statutes of limitations.  (Reply at 4-5.)

10         Plaintiff's quotation of an alleged "Arbitration Agreement" in

11  the Opposition is not supported by any documentation.  It is

12  similar, but not identical to, the language found in Defendant's

13  Exhibit A.  Exhibit A, an agreement signed in 2010, is explicitly

14  superseded by the 2011 agreement, Defendant's Exhibit B.  (Mot.,

15  Ex. B, § 21.)  The 2011 agreement says of statutes of limitations

16  that "Disputes must be Initiated with the Plan prior to the end of

17  the applicable statute of limitations."  (Id. at § 11.)

18  Plaintiff's right to bring a California statutory claim within the

19  applicable California statute of limitations is therefore not

20  prejudiced.

21         The Court concludes that the arbitration agreement is

22  therefore enforceable against all claims within its ambit, with the

23  exception of the "affirmative defense" clause as discussed above.

24  **D.   Claims for Injunctive Relief**

25

26  _____

27      [2](...continued)
    the contract, of course, Defendant might still have a breach of
28  contract claim against Plaintiff, to the degree that it can show
    damages.

1    Plaintiff, citing <u>Cruz v. PacifiCare Health Sys., Inc.</u>, 30

2  Cal. 4th 303 (2003), argues that claims for injunctive relief under

3  the UCL are not arbitrable. (Opp'n at 10.) However, the Ninth

4  Circuit has overruled earlier cases relying on <u>Cruz</u> in the wake of

5  <u>Concepcion</u>, on the ground that state laws shielding entire types of

6  claims from arbitration are preempted by the FAA. <u>Ferguson v.</u>

7  <u>Corinthian Colleges, Inc.</u>, 733 F.3d 928, 935 (9th Cir. 2013);

8  <u>Kilgore v. KeyBank, Nat. Ass'n</u>, 673 F.3d 947, 960 (9th Cir. 2012).

9  Plaintiff's UCL claim is therefore arbitrable.

10 **E.   PAGA Claims**

11    The arbitration agreement in this case contains a waiver of

12 "representative actions," apparently including private attorneys

13 general laws like PAGA. (Mot., Ex. B, § 10.) Plaintiff argues

14 that his PAGA claim, which is on behalf of the state and resembles

15 a qui tam action in that regard, cannot be the subject of an

16 arbitration agreement, because the state is not a party to the

17 arbitration agreement and because subjecting such claims to

18 limitation by private agreement would undermine the statutory

19 scheme, per <u>Iskanian v. CLS Transp. Los Angeles, LLC</u>, 59 Cal. 4th

20 348 (2014) <u>cert. denied</u>, 135 S. Ct. 1155 (2015). Defendant argues

21 that <u>Iskanian</u> is not binding on this Court and that the Court

22 should decline to follow it even as persuasive authority because

23 after <u>Concepcion</u> it is clear that the FAA "displaces" a state's

24 "policy concerns" about enforcement of its labor laws. (Reply at

25 6.)

26    As an initial matter, California law applies to the

27 determination of the validity of the waiver, because, to the extent

28 that Tennessee law differs, it would be contrary to the public

1   policy of California, as embodied in <u>Iskanian</u> and other cases

2   described below, to apply Tennessee law.

3       California's PAGA law provides that, as an alternative to

4   direct enforcement actions on labor code violations by the Labor

5   and Workforce Development Agency (LWDA), an "aggrieved employee"

6   may bring a "civil action" "on behalf of himself or herself and

7   other current or former employees" to collect penalties on the

8   violations.  Cal. Lab. Code § 2699(a).  The penalties are split

9   75/25, with the state taking the larger share and the plaintiff

10  taking the smaller.  Cal. Lab. Code § 2699(i).  California courts

11  have noted that it was the state legislature's intent that

12  individual plaintiffs act as proxies for the state:

13      The Legislature has made clear that an action under the PAGA

14      is in the nature of an enforcement action, with the aggrieved

15      employee acting as a private attorney general to collect

16      penalties from employers who violate labor laws.  *Such an*

17      *action is fundamentally a law enforcement action designed to*

18      *protect the public and penalize the employer for past illegal*

19      *conduct.*  Restitution is not the primary object of a PAGA

20      action, as it is in most class actions.

21  <u>Franco v. Athens Disposal Co.</u>, 171 Cal. App. 4th 1277, 1300 (2009)

22  (emphasis added).  These civil penalties, it should be noted, are

23  separate from so-called "statutory penalties" that might arise

24  under the Labor Code in individual cases.  <u>Villacres v. ABM Indus.</u>

25  <u>Inc.</u>, 189 Cal. App. 4th 562, 579 (2010).  "Before the PAGA was

26  enacted, an employee . . . could not collect civil penalties.  The

27  Labor and Workforce Development Agency (LWDA) collected them.  The

28  PAGA changed that."  <u>Franco</u>, 171 Cal. App. 4th at 1300.

17

1    A question that frequently arises, in the wake of the United
2 States Supreme Court's decision in AT&T Mobility LLC v. Concepcion,
3 131 S. Ct. 1740 (2011), is whether employees may enter into
4 arbitration agreements as to claims made under PAGA, and if so,
5 what agreements they may make.  Specifically, there are two
6 questions: is a blanket waiver of PAGA claims in an employment
7 contract possible under California law, and if not, is the claim
8 nonetheless subject to the arbitration agreement?

9 **1.   Waiver of PAGA Claims**

10    Distinguishing Concepcion, the California Supreme Court in
11 Iskanian answers the first question in the negative.  Concepcion
12 held that a California common law rule, prohibiting as
13 unconscionable certain class action waivers, was preempted by the
14 FAA, because the federal statute preempts not just outright
15 prohibitions on arbitration, but also general contract defenses
16 that are "applied in a fashion that disfavors arbitration."  131 S.
17 Ct. at 1747.  The Court held that the rule against class waivers
18 disfavored arbitration, because class actions require cumbersome
19 procedures to protect the rights of absent parties, "sacrific[ing]
20 the principal advantage of arbitration – its informality."  Id. at
21 1751.  A class action waiver therefore helps parties to an
22 arbitration agreement achieve their contractual goals --
23 streamlining dispute resolution and reducing costs and delay.  Id.
24 Congress has determined that the enforcement of contracts as the
25 parties intended simply outweighs state public policy
26 considerations.  Id. at 1753 ("States cannot require a procedure
27 that is inconsistent with the FAA, even if it is desirable for
28 unrelated reasons.").

1    Iskanian points out, however, that the PAGA claim waiver is
2   different from a class action waiver, because a PAGA claim is not a
3   private dispute; it is "a dispute between an employer and the state
4   Labor and Workforce Development Agency."  59 Cal. 4th at 384.  The
5   court noted that the rule only applies to waivers of the right to
6   sue for civil penalties on behalf of the state, "where any
7   resulting judgment is binding on the state and any monetary
8   penalties largely go to state coffers," and not to waivers of any
9   sort of collective or representative action on private damages.
10   Id. at 387-88.  Thus, "a PAGA claim lies outside the FAA's coverage
11   because it is not a dispute between an employer and an employee
12   arising out of their contractual relationship."  Id. at 386.

13        Defendant points out that Iskanian's interpretation of the FAA
14   is not binding on this Court, which is true.  Nonetheless, a state
15   supreme court's characterization of the state's statutory scheme
16   and whether the government is the real party in interest in a
17   particular claim are, to say the least, deserving of a great deal
18   of deference.  Moreover, Iskanian's reasoning is compelling.  Not
19   only does the state take the lion's share of the statutory penalty
20   (suggesting an individual plaintiff's share is really more of a
21   "finder's fee" than any sort of individual award), and not only is
22   the state bound by the result in the qui tam action, but an
23   individual plaintiff must give notice to the LWDA of his intent to
24   pursue a PAGA claim and may only bring the claim if the LWDA
25   declines to pursue the action itself.  Cal. Lab. Code §§ 2699.3,
26   2699(h).  That is, the state agency effectively controls the
27   availability of such claims.

28

19

1    Additionally, contrary to the holdings of some federal
2  district courts finding PAGA waivers enforceable,[3] under California
3  law a plaintiff may not bring an "individual" PAGA claim at
4  arbitration – the claim is always a representative claim on behalf
5  of the state.  <u>Brown</u>, 197 Cal. App. 4th at 503 n.8 (PAGA claim
6  cannot be brought on an individual basis); <u>Reyes v. Macy's, Inc.</u>,
7  202 Cal. App. 4th 1119, 1123 (2011) ("[T]he claim is not an
8  individual one. A plaintiff asserting a PAGA claim may not bring
9  the claim simply on his or her own behalf but must bring it as a
10 representative action and include 'other current or former
11 employees.'"); <u>Machado v. M.A.T. & Sons Landscape, Inc.</u>, No.
12 2:09-CV-00459JAMJFM, 2009 WL 2230788, at *3 (E.D. Cal. July 23,
13 2009) (same).  This, too, suggests that the claim is the state's
14 enforcement action against the employer for its behavior as to all
15 employees, and not the individual's remedy for personal wrongs.[4]
16    The PAGA claim therefore belongs primarily to the state; the
17 right to bring it cannot be waived by a contract to resolve private
18 disputes.
19 **2.    Whether the PAGA Claim May Be Submitted to Arbitration**
20
21

---

22    [3]<u>E.g.</u>, <u>Quevedo v. Macy's, Inc.</u>, 798 F. Supp. 2d 1122, 1141
23 (C.D. Cal. 2011) ("Nothing in the arbitration Plan Document would
   appear to preclude Plaintiff from pursuing this *individual* claim
24 for civil penalties in arbitration . . . .").

25    [4]The fact that a PAGA claim cannot be brought on an individual
   basis also helps to distinguish this type of waiver from the class
26 action waivers at issue in <u>Concepcion</u> – to the Court's knowledge,
   the Supreme Court has never approved an arbitration agreement that
27 would deprive the individual plaintiff of a certain type of claim
   altogether, and this seems contrary to the teaching of, e.g.,
28 <u>Mitsubishi Motors</u> that an arbitration agreement does not eliminate
   "substantive rights afforded by the statute."  473 U.S. at 628.

1    Courts that have found that the rule against PAGA waivers is
2    not preempted by the FAA have split on whether the claims may be
3    submitted to arbitration.[5]   There are good arguments for both
4    approaches.   On the one hand, the claim belongs to the state, and
5    the state has not waived the judicial forum.   The logical
6    underpinning of <u>Iskanian</u> – lack of state consent to modification of
7    the state's claim – suggests that an individual plaintiff also
8    cannot impose a particular forum on the state's claim, either.   On
9    the other hand, the state may have somewhat less interest in the
10   specific choice of forum than it does in enforcement and recovery
11   of some kind, and even a government agency prosecuting the state's
12   claim may be to some degree constrained by the actions of an
13   individual plaintiff.   <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S.
14   279, 296, 122 S. Ct. 754, 765-66 (2002) ("Baker's conduct may have

15

16

17      [5]<u>Compare</u> <u>Plows v. Rockwell Collins, Inc.</u>, 812 F. Supp. 2d
     1063, 1070 (C.D. Cal. 2011) (denying motion to compel arbitration
18   of PAGA claim); <u>Urbino v. Orkin Servs. of California, Inc.</u>, 882 F.
     Supp. 2d 1152, 1167 (C.D. Cal. 2011) (holding arbitration agreement
19   unenforceable because "the PAGA arbitration waiver . . . taints the
     entirety of the Agreement with illegality") <u>vacated on other</u>
20   <u>grounds</u>, 726 F.3d 1118 (9th Cir. 2013), <u>with</u> <u>Hernandez v. DMSI</u>
     <u>Staffing, LLC.</u>, No. C-14-1531 EMC, 2015 WL 458083, at *6 (N.D. Cal.
21   Feb. 3, 2015) (PAGA claim does not require procedures "inconsistent
     with the FAA," because it does not require class certification,
22   notice, or opt-out, and its preclusive effect is limited); <u>Zenelaj</u>
     <u>v. Handybook Inc.</u>, No. 14-CV-05449-TEH, 2015 WL 971320, at *8 (N.D.
23   Cal. Mar. 3, 2015) ("Defendant in this case has not shown that
     arbitration of these claims would be particularly complex,
24   cumbersome, time-consuming, or expensive."); <u>Mohamed v. Uber</u>
     <u>Technologies, Inc.</u>, No. C-14-5200 EMC, 2015 WL 3749716, at *25
25   (N.D. Cal. June 9, 2015) ("PAGA imposes no *procedural* requirements
     on arbitrators . . . beyond those that apply in an individual labor
26   law case.").   In some cases, there is a nonseverability clause
     requiring the entire agreement to be thrown out if the waiver is
27   invalid.   <u>E.g.</u>, <u>Montano v. The Wet Seal Retail, Inc.</u>, 232 Cal. App.
     4th 1214, 1224 (2015).   However, in this case, the waiver clause is
28   explicitly severable; thus, the issue is simply whether the claim
     is within the scope of the arbitration agreement at all.

1    the effect of limiting the relief that the EEOC may obtain in

2    court.").

3        The Court finds that the PAGA claim should not be submitted to

4    arbitration.  As a matter of logic, if the claim belongs primarily

5    to the state, it should be the state and not the individual

6    defendant that agrees to waive the judicial forum.  In the PAGA

7    statute, the Legislature has explicitly selected a judicial forum

8    as the default forum.  E.g., Cal. Lab. Code § 2699(e)(1)

9    ("[W]henever the Labor and Workforce Development Agency . . . has

10   discretion to assess a civil penalty, *a court* is authorized to

11   exercise the same discretion, subject to the same limitations and

12   conditions, to assess a civil penalty.") (emphasis added).  Thus,

13   both federalism and separation-of-powers concerns are at their apex

14   here.  Moreover, civil enforcement of state labor laws is a matter

15   of traditional, if not preeminent, state regulation.  Accordingly,

16   it should not be understood to be preempted or superseded by a

17   federal statute absent very clear evidence of congressional intent.

18   United States v. Locke, 529 U.S. 89, 108 (2000).  The Court sees no

19   such evidence here, and in the absence of guidance from a higher

20   court, the Court will not presume to deprive a state of the

21   mechanism chosen by its legislature to enforce its civil laws.

22       The PAGA claim remains before this Court.[6]

23   ─────────────────────

24       [6]This issue of the application of arbitration agreements to
     PAGA claims has been contentious and is currently before the Ninth
25   Circuit on a consolidated set of appeals.  See Sakkab v. Luxottica
     Retail N. America, No. 13-55184 (9th Cir., June 30, 2015) (oral
26   arguments).  But the Court notes that even if the FAA could apply
     to PAGA claims, the practical benefit of streamlined dispute
27   resolution is not necessarily thwarted by including a PAGA claim in
     the arbitration.  As a California appellate court has noted,
28   arbitration of a PAGA claim "would not have the attributes of a
                                              (continued...)

**IV.   CONCLUSION**

The Court hereby orders the parties to engage in arbitration under the terms of the arbitration agreement, with the exception of the PAGA claim, which remains before the Court and is not stayed. The "affirmative defense" clause, however, is unconscionable and unenforceable and severed from the agreement.


IT IS SO ORDERED.

Dated: July 14, 2015

DEAN D. PREGERSON
United States District Judge

---

⁶(...continued)
class action that the <u>AT&T</u> case said conflicted with arbitration, such as class certification, notices, and opt-outs." <u>Brown v. Ralphs Grocery Co.</u>, 197 Cal. App. 4th 489, 503 (2011).  <u>See also Arias v. Superior Court</u>, 46 Cal. 4th 969, 981 (2009) (PAGA action need not meet the requirements of a class action).  Thus, <u>Concepcion</u> does not require the finding that the FAA preempts the <u>Iskanian</u> rule, because it is not a rule "demanding procedures incompatible with arbitration." <u>Concepcion</u>, 131 S. Ct. at 1747. Thus, *at most*, an arbitration agreement could force a PAGA representative claim to arbitration; there is no reason to think the state could not declare *waivers* of such claims unlawful as a matter of contract.  However, absent a ruling to the contrary by the Ninth Circuit, the logic of <u>Iskanian</u> compels this Court to find that PAGA claims are simply beyond the scope the arbitration agreement altogether and are therefore not subject to a motion to compel arbitration.